IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **BRIAN KEITH LYONS,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Civil Action No. 3:11-CV-1056-N |
| § | |
| **CHASE HOME LENDING, et. al.,** § | |
| § | |
| **Defendants.** § | |

### AMENDED FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to Special Order No. 3-251, this case was referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court is *Defendants' 12(B)(6) Motion to Dismiss and Defendants Napoli's and Quinn's 12(B)(2) Motion to Dismiss*, filed May 27, 2011 (doc.3). Based on the relevant filings, evidence, and applicable law, the 12(b)(2) motion should be **DENIED,** and the 12(b)(6) motion should be **GRANTED**.

### I. BACKGROUND

Plaintiff Brian Keith Lyons initiated this action in state court against Chase Home Lending, JP Morgan Chase &Co., Katherine Melinda Napoli, Jean E. Lutterbei,[1] and Lawrence S. Quinn in their individual and official capacities. He asserted claims of retaliation under the Texas Whistleblower Act, and violations of the First and Fourteenth Amendments of the United States Constitution under 42 U.S.C. § 1983.[2] The defendants timely removed the action to this court on

---

[1] Plaintiff misspelled the name as "Jeannie Lutterbei" in his complaint.

[2] Although the second count is entitled "Violation of First and Fourteenth Amendment Rights," Plaintiff alleges that the defendants' acts or omissions deprived him "of his First Amendment rights provided to him by the provisions of the due process clause of the Fourteenth Amendment to the United States Constitution, made by 42 U.S.C. § 1983."

May 20, 2011, on the basis of federal question jurisdiction.

Plaintiff alleges that Chase Home Lending employed him as a quality analyst in February 2009. In June 2009, when he inquired about an open vice president position during a meeting, group manager Lutterbei responded that he did not even look the vice president type and that she was hiring someone else to be his manager. He was promoted to a supervisor position in July 2009. In September 2009, when he allegedly reported racist and sexist comments towards him by another employee, Lutterbei responded: "If it didn't hurt you, suck it up, get over it and do your job." He was promoted to a vice president position in December 2009. In May 2010, Lutterbei also allegedly complained to Napoli (the incoming senior manager) that Plaintiff had called Lutterbei a "bitch." That same month, Napoli conducted a face-to-face meeting with Plaintiff's staff, and Quinn (another manager) informed him that he would be placed on written warning.

On July 27, 2010, Quinn placed him on written warning for allegedly making derogatory remarks to other employees, being disrespectful to staff, and for an inability to articulate expectations to staff, but she failed to provide him any information about when and against whom he had made those derogatory statements. In August 2010, Plaintiff inquired with the Human Resources ("HR") department about the racist and sexist comments he had reported to his managers in 2009. He claims that Quinn later informed him that Lutterbei was unhappy with his HR inquiry and had questioned Quinn's judgment in promoting him to the vice president position. In September 2010, Plaintiff's former spouse allegedly sent an unauthenticated email to JP Morgan Chase. Plaintiff was terminated in November 2010, and Quinn allegedly told him that the termination was for sending an inappropriate and threatening email to an individual outside the JPMorgan organization while on written warning.

Plaintiff claims that during his employment, he had concerns about the racially discriminatory manner in which JPMorgan Chase & Co. treated him and other employees of the same race in terms of higher salary and preferential treatment for employees of a different race. When he asked his managers about why certain of his staff members were making more than him and asked for a salary increase, they responded by justifying his salary and placing the staff members at issue as his peers on the organizational chart. He claims that Lutterbei, in her capacity as group manager, perpetuated racial tension by failing to follow up with HR when he reported the racist and sexist comments. Napoli, in her capacity as senior vice president of the group, perpetuated racial tension by defending Lutterbei's action. In her capacity as senior manager, she orchestrated his termination for inquiring about prior reports of racist and sexist comments. Quinn, in his capacity as manager, perpetuated racial tension by not reporting known racial comments directed toward Plaintiff.[3]

All of the defendants now move to dismiss the action for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).[4] Defendants Napoli and Quinn additionally move to dismiss the claims against them for lack of subject matter jurisdiction. With a timely filed response and reply, the motion is now ripe for consideration.

## II.  RULE 12(b)(2) MOTION TO DISMISS

The non-resident individual defendants, Napoli and Quinn, argue that there is no personal

---

[3] Plaintiff's complaint states that he will amend this lawsuit when procedurally appropriate to include charges of racial discrimination and retaliation.

[4] JP Morgan Chase & Co. and Chase Home Lending claim they are not proper parties but join the motion. They claim that Plaintiff's actual former employer, JPMorgan Chase Bank, National Association ("NA"), is the proper defendant. JPMorgan Chase Bank, NA, also joins the motion but will not be considered a movant because it has not been named or joined as a defendant.

jurisdiction over them because there are no allegations that they committed any torts in Texas in their individual capacities, and jurisdiction based on their corporate contacts with Texas is barred by the fiduciary shield doctrine.[5]

Personal jurisdiction over a non-resident requires a determination of whether the non-resident is subject to jurisdiction under the laws of the state in which the court sits and the exercise of jurisdiction over the defendant comports with the due process requirements of the United States Constitution. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985); *Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent that it would be amenable to the jurisdiction of a state court in the same forum. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984); Fed. R. Civ. P. 4(e)(1), 4(h)(1). The Texas long-arm statute authorizes the exercise of personal jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment, so only the federal due process inquiry need be addressed. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *see* Tex. Civ. Prac. & Rem. Code Ann. § 17.041 *et seq*. (Vernon 1997). "Exercising personal jurisdiction over a nonresident defendant is compatible with due process when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Panda Brandywine*, 253 F.3d at 867.

The "minimum contacts" aspect of the analysis can be established through contacts that give

---

[5] Even though they initially move to dismiss the claims against them on the merits, it is necessary to consider the jurisdictional attack first. "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the cause (subject-matter jurisdiction) and the parties (personal jurisdiction). . ." *See Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 423 (2007)."

rise to general jurisdiction or those that give rise to specific jurisdiction. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999). General jurisdiction exists where the non-resident's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Alpine View Co., Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). Specific jurisdiction is appropriate where the non-resident has purposefully directed his activities at the forum state and the litigation results from the alleged injuries that arise out of or relate to those activities. *Id.* Under either a general or specific jurisdiction analysis, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474. To comport with due process, the defendant's conduct in connection with the forum state must be such that he "'should reasonably anticipate being haled into court' in the forum state." *Latshaw*, 167 F.3d at 211.

The party seeking to assert jurisdiction must present sufficient facts to make out only a *prima facie* case supporting jurisdiction over the nonresident. *Alpine View*, 205 F.3d at 215 (citing *Felch v. Transportes Lar–Mex SA de CV*, 92 F.3d 320, 326 (5th Cir. 1996). The court accepts that party's uncontroverted factual allegations as true and resolves all factual disputes in its favor. *Id*. The court, however, is not required "to credit conclusory allegations, even if uncontroverted." *See Panda Brandywine*, 253 F.3d at 869.

**A. General Jurisdiction**

To make a *prima facie* showing of general jurisdiction, a plaintiff must show that the defendant's contacts with the forum state unrelated to the litigation are sufficient to satisfy due process requirements. *Alpine View*, 205 F.3d at 217. The continuous and systematic contacts test

for general jurisdiction "is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 717 (5th Cir. 1999). "The contacts must be reviewed in toto, and not in isolation from one another." *Johnston*, 523 F.3d at 610.

Here, Plaintiff alleges that Napoli is a citizen and resident of California and was at the relevant time employed by the Chase Home Lending division as vice president. He similarly alleges that Quinn is a citizen and resident of Florida and was the vice president of Internal Controls in the Chase Home Lending division at all relevant times. The only other allegations against them concern their respective roles in allegedly violating the Texas Whistleblower Act and the First and Fourteenth Amendments of the Constitution. Because Plaintiff has failed to allege that defendants had continuous and system contacts with Texas unrelated to this litigation, he has failed to make a *prima facie* case of general jurisdiction over them.

Defendants Napoli and Quinn, on the other hand, provide affidavit testimony that they do not reside in Texas, do not own real property in Texas, do not have a financial interest in Texas, and do not have a Texas driver's license or a Texas telephone number. While they admit that they have traveled to Texas on a regular basis as employees of JPMorgan Chase Bank, NA, in the course and scope of their employment, they correctly point out that jurisdiction based on those contacts is barred by the fiduciary shield doctrine. Under the doctrine, an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual even if there is personal jurisdiction over the corporation. *See Stuart v. Spademan*, 772 F.2d 1185,

1197 (5th Cir. 1985).

**B. Specific Jurisdiction**

To make a *prima facie* showing of specific jurisdiction, plaintiffs must present sufficient facts to make a *prima facie* showing that (1) the defendant purposefully directed his activities at Texas and the litigation resulting from the alleged injuries arise out of or relate to those activities, and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *See Panda Brandywine*, 253 F.3d at 867–68.

Plaintiff makes general allegations that at all times relevant to this lawsuit, Napoli was the vice president of Chase Home Lending division and Quinn was the vice president of Internal Controls in that division, and that both of them engaged in the alleged acts or omissions against him in those capacities. As discussed, the fiduciary shield doctrine holds that "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual although the state has in personam jurisdiction over the corporation." *Stuart*, 772 F.2d at 1197. The doctrine does not bar the exercise of personal jurisdiction over an individual officer, however, when the corporation is the alter-ego of the individual, or when the officers or agents of a corporation direct purposeful, tortious activity towards a particular forum. *See id.* at 1198; *Lorenzana v. Gulf Coast Marine & Assocs. Inc.*, 2010 WL 4737424, at *3 (E.D. Tex. Nov. 16, 2010) (citations omitted).

Here, Plaintiff alleges that defendants Napoli and Quinn retaliated against him for exercising his rights of free speech on issues of racism and sexism in the workplace. He specifically alleges that Quinn placed him on written warning and perpetuated racial tension by failing to report known racial comments made and directed towards him. He also alleges that Napoli perpetuated racial

7

tension by defending Lutterbei's actions, and orchestrated his termination in retaliation of his inquiry about prior reports of racist and sexist comments. Liberally construing these *pro se* allegations, as a court must, Plaintiff appears to claim that defendants Napoli and Quinn purposefully committed the constitutional torts of First Amendment retaliation and Fourteenth Amendment due process violations against a Texas resident, with the injury from the torts being felt in Texas. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 174 (1988) (characterizing First Amendment retaliation and Fourteenth Amendment due process violations as constitutional torts); *Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186, 1189–90 (5th Cir. 1984) (out-of-state acts giving rise to tortious injury in forum state enough to warrant personal jurisdiction). The fiduciary shield doctrine therefore does not bar the exercise of personal jurisdiction over them for these alleged torts.

    Finally, the exercise of personal jurisdiction over defendants Napoli and Quinn does not offend traditional notions of "fair play and substantial justice." *See Panda Brandywine*, 253 F.3d at 867–68. In determining whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice, the court considers the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and "the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). Plaintiff has chosen a convenient forum that does not pose an excessive burden on the two defendants; both state in their affidavits that they travel to Texas regularly in the course of their employment. Additionally, because the rest of the defendants are amendable to jurisdiction in Texas, the exercise of personal jurisdiction over defendants Napoli and Quinn

8

satisfies the judicial system's interest in obtaining an efficient and fair resolution of the controversy.

Because Plaintiff has made a prima facie case of specific jurisdiction over defendants Napoli and Quinn, their Rule 12(b)(2) motion to dismiss the claims against them for lack of personal jurisdiction should be denied.

### III.  RULE 12(b)(6) MOTION TO DISMISS

All defendants move to dismiss the claims against them under Rule 12(b)(6) for failure "to state a claim upon which relief can be granted."

Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). However, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The alleged facts must "raise a right to relief above the speculative level." *Id*. In short, a complaint fails to state a

claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

**A. Texas Whistleblower Claim (Count 1)**

The defendants move to dismiss Plaintiff's Texas Whistleblower Act claim on grounds that none of the named defendants is a government entity, and that Plaintiff never reported a violation of law to a law enforcement authority.

The Texas Whistleblower Act prohibits a state or local governmental entity from terminating or taking any adverse employment action against an employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority. Tex. Gov't Code § 554.002(a); *Garret v. Judson Indep. Sch. Dist.*, 299 F.App'x 337, 341 (5th Cir. 2008). In order to establish a claim under the Act, a plaintiff must show that he is a public employee, he acted in good faith in making a report, the report involved a violation of law by an agency or employee, the report was made to an appropriate law enforcement authority, and he suffered retaliation as a result of making the report. *Tharling v. City of Port Lavaca*, 329 F.3d 422, 428 (5th Cir. 2003); *Phelan v. Texas Tech Univ.*, 2008 WL 190741, at *3 (Tex. App.–Amarillo, Jan. 23, 2008, pet. denied).

Here, Plaintiff has failed to allege that the named defendants are governmental entities or employers or that he reported any violations of law to an appropriate law enforcement authority. The Act defines an "appropriate law enforcement authority" as a governmental official or entity that "an employee in good faith believes is authorized to regulate under or enforce the law alleged to be violated in the report or to investigate or prosecute a violation of the criminal law." *Id*. § 554.002(b); *Tharling*, 329 F.3d at 428. Plaintiff alleges only that he reported workplace racism and

sexism to his managers and inquired about those reports with the HR department. He does not allege that the managers or the HR department are governmental officials or entities that he, in good faith, believed were authorized to regulate the alleged conduct. His Texas Whistleblower claim should therefore be dismissed for failure to state a claim upon which relief can be granted.

**B. First and Fourteenth Amendment Claims under Section 1983 (Count 2)**

The defendants next move to dismiss Plaintiff's First and Fourteenth Amendment claims under § 1983 on the ground that Plaintiff has failed to allege that the defendants were acting under color of state law.

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts showing that he was deprived of a right secured by the Constitution and the laws of the United States, and that the deprivation of that right was by a defendant acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). A private party acts "under color of state law," and is thus liable under § 1983, if it performs a function which is traditionally the exclusive province of the state, or when there is a sufficiently close nexus between the state and the action of the private party such that the action is fairly attributable to the state. *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989). "The involvement must be directly related to the action that gives rise to the § 1983 claim." *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1348-49 (5th Cir. 1985). "State action can be found 'only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains.'" *Id.* (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

Here, all of the named defendants are private parties that are typically not subject to liability under § 1983. Further, Plaintiff makes no allegations in his complaint that the defendants were acting under color of state law. While he claims in his response that "JPMorgan Chase" operates in Texas and receives tax credits for its operation, "the receipt of financial assistance, in and of itself, is not a sufficient nexus" to make the acts of a private entity equal the acts of the state. *See Madry v. Sorel*, 558 F.2d 303, 305 (5th Cir. 1977). His constitutional claims under § 1983 should therefore be dismissed for failure to state a claim.

## C. First and Fourteenth Amendment Claims

To the extent that Plaintiff seeks to assert any First and Fourteenth Amendments claims apart from his section 1983 claim, the defendants move to dismiss them for failure to allege state action.

"As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of the fact that "most rights secured by the Constitution are protected only against infringement by governments'" and not private parties. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *see also Frazier v. Board of Trustees of Nw. Miss.*, 765 F.2d 1278, 1283 (5th Cir. 1985). Of import here, the First Amendment prohibits "Congress" or the federal government from abridging the listed freedoms, and the Fourteenth Amendment prohibits a "State" from depriving any person of life, liberty, or property without due process of law, and thus by incorporation, from invading any First Amendment freedoms and guarantees as well. *See Edwards v. South Carolina*, 372 U.S. 229, 235 (1963); *Tilton v. Richardson*, 6 F.3d 683, 687 (10th Cir. 1993). Since no federal agency is a party to this case, a violation of the First or Fourteenth Amendment can only be shown by conduct that may fairly be characterized as "state action." *See McCrory v. Rapides Reg'l Med. Ctr.*, 635 F.Supp. 975, 980 (W.D. La. 1986) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982)).

12

Mere private action, no matter how discriminatory or wrongful, will not give rise to a constitutional cause of action based on these amendments. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349 (1984); *Shelly v. Kraemer*, 334 U.S. 1, 13 (1948).

As discussed, Plaintiff has made no allegations sufficient for the private defendants in this case to be deemed as state actors. Accordingly, his First and Fourteenth Amendment Claims against the defendants should also be dismissed for failure to state a claim upon which relief can be granted.

### IV. CONCLUSION

Defendants Napoli's and Quinn's 12(b)(2) motion to dismiss should be **DENIED**. All of the defendants' 12(b)(6) motion to dismiss should be **GRANTED,** and all claims against them should be **DISMISSED** with prejudice.

**SO RECOMMENDED** on this 1st day of September, 2011.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

13

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE